ORIGINAL

# In the United States Court of Federal Claims

No. 15-694C
July 30, 2015

FILED
JUL 30 2015
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| * * * * * * * * * * * * * * * * * <br> FRANCIS EDWARD VEASEY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. <br> * * * * * * * * * * * * * * * * * | Pro Se Plaintiff; In Forma Pauperis Application; Lack of Subject Matter Jurisdiction; Injunctive Relief. |

**Francis Edward Veasey**, Philadelphia, PA, pro se.

**Martin M. Tomlinson**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Robert E. Kirschman, Jr.**, Director, **Franklin E. White, Jr.**, Assistant Director, **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, Washington, D.C.

## ORDER

**HORN, J.**

### FINDINGS OF FACT

On July 6, 2015, plaintiff Francis Edward Veasey filed a two-and-a-half-page pro se complaint in the United States Court of Federal Claims, along with an application to proceed in forma pauperis. Plaintiff's complaint was filed "against the United States and its agency, the Department of Veteran Affairs." Plaintiff's complaint, which seeks an unidentified amount of monetary damages and "emergency injunctive relief in the form of a cease and desist order to be directed to the said agency for the violation of Constitutional Protections ensuring Due Process and adverse actions in the absence of Probable Cause," appears to arise from the implementation of certain restrictions on how Mr. Veasey would be allowed to use the Philadelphia Veterans Administration Medical Center (VAMC), a facility operated by the United States Department of Veterans Affairs (VA) in Philadelphia, Pennsylvania.

In a March 18, 2015 letter sent to plaintiff, which was attached as an exhibit to plaintiff's complaint, Laszlo Gyulai, MD, Chair of the Philadelphia VAMC's Disruptive Behavior Committee, informed plaintiff that he would be subject to certain behavioral

restrictions governing his future visits to the VAMC, effective immediately. The implementation of these restrictions was apparently prompted by an incident on March 12, 2015, in which Mr. Veasey threatened to physically harm VAMC staff during a visit to the Philadelphia VAMC. Specifically, the March 18 letter informs the plaintiff that:

> During all of your future visits to the Philadelphia VAMC you may be seen in the presence of a police officer stationing [sic] in the hallway close to the room in which you are examined. We would ask you to present yourself to the police when you arrive to the Philadelphia VAMC so you can be escorted to your visit. If you become disruptive, Philadelphia VAMC Police will immediately escort you from the Philadelphia VAMC grounds and you will not be permitted to return that day, except for evaluation of potentially life-threatening emergencies. You may return at the time of your next appointment. However, continued disruptive, threatening or violent behavior may result in additional restrictions.

According to the letter, these restrictions were approved by the facility's Chief of Staff and would remain in place for two years, but could be relaxed sooner if recommended by plaintiff's care providers. The letter also indicated that the restrictions did not reduce Mr. Veasey's eligibility for any medically appropriate health care. Additionally, the letter informed Mr. Veasey of his right to appeal the decision to implement these restrictions to the Philadelphia VAMC's Chief of Staff within thirty days. According to his complaint, upon receiving the letter, plaintiff "registered Disagreement with the DVA [Department of Veterans Affairs] actions both by letters to the affected and instituting parties, and in informal conversations with medical professionals, psychological evaluators, and Patient Advocates." According to plaintiff's complaint, having not received a response, plaintiff claims "a formal Notice of Disagreement [was] sent to the designated DVA Regional Office in Philadelphia, PA on the 29th of June, 2015."

Mr. Veasey's apparent next course of action was to file a complaint in this court. In his complaint, plaintiff makes a number of claims against the United States and the VA relating to the restrictions placed on his use of the VAMC. In particular, plaintiff claims that the restrictions precipitated the following "Adverse Effects":

> The Restriction, in effect, becomes an armed prevention of the acquisition of benefits and treatment for disability incurred while in service to the United States and rated at 100%, an effectual total disability.

> The Restriction produces a climate of tension and hesitancy on the part of medical personnel, benefits workers, and other patients and clients of the Department.

> The Restriction presents an opportunity for authorities to apprehend the Plaintiff in the absence of probable cause directly due to the circumvention of Due Process Protections.

> The restriction causes harm to the Plaintiff in that reputation and furtherance of business with government are impeded in an unlawful manner.

> The imposition of the Restriction prevents representation as provided by the co-located Disabled American Veterans service organization in both locations.

To redress these claimed injuries, plaintiff seeks "emergency injunctive relief in the form of a cease and desist order," an "explicit prohibition to retaliation for this filing in the prevention to the acquisition of medical treatment, benefit application and approval, or the receipt of DVA [Department of Veterans Affairs] Compensation," and "any and all Compensatory and Punitive Damages that the court finds appropriate."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

Even granting the more liberal construction afforded to a complaint filed by a pro se plaintiff, it is not clear from Mr. Veasey's brief complaint what would be the grounds for this court's jurisdiction over his various claims. It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to

3

ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the Rules of the Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of

4

jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law

that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not

6

money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

Plaintiff asserts in his complaint that he seeks relief "for the violation of Constitutional Protections ensuring Due Process and adverse actions in the absence of Probable Cause." This court, however, lacks jurisdiction over these allegations of constitutional claims. To the extent that plaintiff might be asserting that the restrictions placed on his use of the VAMC create "an opportunity for authorities to apprehend the Plaintiff in the absence of probable cause," in theory, such a claim would be based on Fourth Amendment rights, which provision of the Constitution is not money-mandating, and, therefore, such claims are not within this court's jurisdiction. See LaChance v. United States, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States." (citing Shaw v. United States, 8 Cl. Ct. 796, 800 (1985))); Roberson v. United States, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997))), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Haka v. United States, 107 Fed. Cl. 111, 113-14 (2012); Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); Treece v. United States, 96 Fed. Cl. 226, 231 (2010) (finding that the Fourth Amendment is not money-mandating (citing Tasby v. United States, 91 Fed. Cl. 344, 346 (2010))); Fry v. United States, 72 Fed. Cl. 500, 507 (2006) ("As a matter of law, the Fourth Amendment's prohibition on unreasonable search and seizure and the Due Process Clause of the Fifth Amendment are not money-mandating." (citation omitted)). Therefore, plaintiff's claims based on the Fourth Amendment to the United States Constitution are not within this court's jurisdiction.

Similarly, to the extent that plaintiff's complaint attempts to assert violations of his right to due process, the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments (citing LeBlanc v. United States, 50 F.3d at 1028)); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288

7

(Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Due process claims "must be heard in District Court." Kam–Almaz v. United States, 96 Fed. Cl. at 89 (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334); see also Hampel v. United States, 97 Fed. Cl. at 238. Therefore, to the extent that plaintiff's complaint alleges violations of his constitutional rights to due process, no such cause of action can be brought in this court.

Plaintiff also asserts in his complaint that the restrictions placed on his use of the VAMC harmed him in the sense that his "reputation and furtherance of business with government are impeded in an unlawful manner." These apparent claims of defamation and interference with a business relationship sound in tort, and, therefore, also are outside of the jurisdiction of the court. The Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d at 623 ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. at 238; Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims. Here, Mr. Jumah seeks damages for '[n]eglect, [m]isrepresentation, [f]alse [i]mprisonment, [c]onspiracy, [i]ntentional [i]nfliction of emotional [d]istress, [i]nvasion of [p]rivacy, [n]egligence and [t]respass and [p]unitive [d]amages.' These are all claims sounding in tort." (internal citation omitted; all brackets in original)), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other

8

wrongful conduct when discharging its official duties' . . . [and] Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims." (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998))); McCullough v. United States, 76 Fed. Cl. at 3 (2006); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Therefore, plaintiff's apparent allegations of defamation and interference with business relationships sound in tort and, accordingly, also must be dismissed for lack of jurisdiction.

In addition to seeking "any and all Compensatory and Punitive Damages that the court finds appropriate," Mr. Veasey appears to seek injunctive relief in the form of "a 'Cease and Desist ' order directed to the VAMC Philadelphia, The VAROIC [VA Regional Office and Insurance Center], also in Philadelphia, and the Department of Veteran Affairs Police Force," as well as an "explicit prohibition to retaliation for this filing in the prevention to the acquisition of medical treatment, benefit application and approval, or the receipt of DVA Compensation for the referenced Disability." This court's ability to grant equitable relief is limited, and does not extend to the sort of injunctive relief requested by Mr. Veasey. See United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1729 (2011) (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."); Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, see 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." (citing United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'") and Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990))); James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (Fed. Cir. 1999) ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting Austin v. United States, 206 Ct. Cl. 719, 723, cert. denied, 423 U.S. 911 (1975))); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 192 (2013); Haka v. United States, 107 Fed. Cl. at 113; Halim v. United States, 106 Fed. Cl. 677, 684–85 (2012); Smalls v. United States, 87 Fed. Cl. 300, 307 (2009); Voisin v. United States, 80 Fed. Cl. 164, 178 (2008) ("It is well-established that the Court of Federal Claims generally does not have the authority to entertain declaratory judgment requests."). In the above captioned case, Mr. Veasey has not identified a jurisdictional basis for this court to entertain the injunctive relief he has requested, and any such claims must also be dismissed.

The court notes that Mr. Veasey has been a frequent litigant in federal courts, filing a number of complaints and a number of appeals, all of which have been dismissed. See In re Francis Veasey, No. 08-8015 (3d Cir. Mar. 6, 2008) (denying petition for writ of mandamus for lack of jurisdiction); Veasey v. Fisher, No. 07-cv-01446, 2008 WL 1758908 (W.D. Pa. Apr. 16, 2008) (granting defendant's dismissal motion because plaintiff had failed to exhaust administrative remedies before filing a civil-rights complaint against prison officials), aff'd, 307 F. App'x 614 (3d Cir. 2009); Veasey v. The Att'y Gen. Office Pa., No. 08-cv-00242, 2008 WL 1019731 (E.D. Pa. Apr. 7, 2008) (dismissing two of eight claims in plaintiff's habeas corpus petition for being raised in a prior claim, while giving

9

leave to apply for a certificate of appealability with respect to the others), perm. app. denied, No. 08-2113 (3d Cir. July 11, 2008), reh'g and reh'g en banc denied (3d Cir. Dec. 17, 2008); Veasey v. Connor, No. 01-cv-00523, 2002 WL 31355252 (D. Del. Oct. 17, 2002) (dismissing plaintiff's petition for writ of habeas corpus for lack of subject matter jurisdiction, because plaintiff was not in custody in Delaware at the time petition was filed), appeal dismissed sub nom. Veasey v. Blaine, No. 03-1084 (3d Cir. Apr. 23, 2003); Veasey v. Connon, No. 00-cv-05745 (E.D. Pa. Apr. 3, 2002) (denying plaintiff's petition for writ of habeas corpus on ground that he "has not made a substantial showing of a denial of a constitutional right"), appeal withdrawn sub nom. Veasey v. Blaine, No. 01-1659 (3d Cir. Apr. 17, 2001), appeal withdrawn sub nom. Veasey v. Blaine, No. 01-1720 (3d Cir. Apr. 17, 2001), appeal denied, No. 02-2067 (3d Cir. June 24, 2002); (dismissed because plaintiff's application for certificate of appealability was untimely).

Along with his complaint, plaintiff submitted an application to proceed in forma pauperis, asserting that he is unable to pay the required filing fees, and requesting waiver of court costs and fees. In this application, plaintiff indicates that he is unemployed and has not received income from any source in the last twelve months. Plaintiff, however, indicated "Yes" in response to a query asking, "Do you own any cash, or do you have money in checking, savings, or any other accounts?" and stated "$500.00 month average" when asked to estimate the total value thereof. Mr. Veasey's application further provides that he does not own any real estate, stocks, bonds, notes, automobiles, or other valuable assets, does not have any dependents, and is not currently a prisoner.

In order to provide access to this court to those who cannot pay the filing fees mandated by RCFC 77.1(c) (2014), the statute at 28 U.S.C. § 1915 (2012) permits a court to allow plaintiffs to file a complaint without payment of fees or security under certain circumstances. The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis, is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). In Fiebelkorn v. United States, the United States Court of Federal Claims indicated:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Hayes v. United States, 71 Fed. Cl. 366, 369 (2006). The court notes that the United States District Court for the Eastern District of Pennsylvania previously denied an Application to Proceed In Forma Pauperis, filed by Mr. Veasey along with a pro se complaint, based on its determination that the $450.00 difference between his monthly income and monthly expenses, as he

10

reported on his application, was sufficient to cover the court's $350.00 filing fee. See Veasey v. Pennsylvania, No. 12-cv-03297 (E.D. Pa. June 14, 2012). Ultimately, however, regardless of whether Mr. Veasey has any present income, which might disqualify him from in forma pauperis eligibility, which is not clear from the form he completed and submitted to the court, for the reasons discussed above, his complaint is being dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is **DISMISSED** for lack of jurisdiction. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

*[signature]*
**MARIAN BLANK HORN**
Judge